Case 224307 United States v. Evans. Mr. Gillette. Thank you, Your Honor, and good morning, Your Honors, and may it please the Court. It's my privilege to represent James Casey Lee Evans, the appellant in this matter, and we're asking the Court today to hold that a defendant has not willfully violated 18 United States Code section 1855 when his actions as he understood them were entirely lawful. That is to say, if the fire that he started, as he had a good faith belief that it was on private land and with the consent of the landowner, subsequently if it violated the statute in question. So you're asking us to reach a different conclusion than the Second Circuit did in the Allen case. That's exactly right, Your Honor. We believe that in the circumstances of the Allen case, that was a correct decision, but Allen even in itself held that Mr. Allen, the firefighter who was bored and was trying to start fires to keep in shape as it were, that what he intended to do was unlawful. But counsel, that may be true, and that may be different than what you contend occurred here, but the requirements of the determined on that basis can't be. I mean, that was a fact that the firefighters might have known that their conduct, even if it wasn't on federal land, was unlawful. We have to decide a rule that applies regardless. You're right, Your Honor. You absolutely do, and this is the rule that we're arguing that his conduct or her conduct, as they understood it, would not have been unlawful. Then that evidence for and against the intent with respect both to the starting of the fire and the ownership of the land should be presented to the jury with instructions to consider that Allen case, for instance. Are you saying here, I just want to make sure I'm clear, you're saying a defendant can make a mistake of fact defense on willfulness. Is that regardless of whether the jurisdictional element requires knowledge that it's federal land, that there would still be a mistake of fact defense if you thought you were on your own property? If I understand your question correctly, Judge Rushing, yes, that would be the answer. The difference between a defense and the government's burden to prove the jurisdictional element? If you are asking is there an affirmative defense that this element is both jurisdictional and substantive, yes, we believe that that's a possibility. A mistake of faith defense would be in a case like this, it would be a valid defense. You can see how it would be, you know, arson is, we know it's wrong to set fire to someone else's property, whether it's the federal government, state government, your neighbor, anyone who doesn't belong to you and you don't have permission, but that's different than setting fire to your own property. And perhaps that's not done with a bad mind, but evil intent, with willfulness. Now, I don't think, that doesn't sound like we're talking about whether the jurisdictional, whether the government has to prove the jurisdictional element that you acknowledge with respect to that element. It sounds like we're talking about a defense particular to the defendant's knowledge in this case. If I understand your question, Judge, I agree with that. The knowledge, Mr. Evans' knowledge of ownership of that property is somewhat unique to his case because that's what distinguishes his intention to do something unlawful from his intention to do something innocent. It makes a difference, doesn't it, whether you are saying it's an essential element, his knowledge is an essential element that the government must prove, or whether you're that, you know, that's not their proof, but we get to show this mistake of fact defense. So, can you, I wasn't entirely clear what, and I'll mean that in a bad way, but can you tell me what your position is? Is it the government's burden, or is it a defense you think you've been deprived of? Let me say, as you begin to answer that question, as I understood your argument about the trial in here, it is that the willfulness element in the statute applies to both the act of arson and the knowledge of presence on government land. So, I understood your argument to apply willfulness to both of those elements and not to some sort of an affirmative defense that's unrelated to willfulness. Judge Agee, I would agree with what you just said, and the issue of knowledge that Judge Quattlebaugh was raising, we, clearly as a jurisdictional element, the government does not have to prove that the case, his knowledge that he had left his family land and was now on government land because they abutted each other, that goes directly to willfulness. So, it's easy to become somewhat confused in terms of our argument, but especially a trial with regard to his knowledge that he was on government land. We all knew at trial that the lands abutted each other and that the question of whether he knew that he had left his family land was an important issue to determine whether he was acting willfully with the intent to do something unlawful. Let me ask you about what happened at trial. I was trying to go back and piece this together. As best I could understand it, Mr. Evans made a proffer, or you made a proffer through Mr. Evans of evidence he would present, and then that was not allowed to go to the jury. Is that correct, or what happened there? We made two proffers. These were outside the presence of the jury? That's correct, Your Honor. The first of those proffers, after the surveyor had presented evidence about where the property was, Mr. Evans believed that he had some objective observations that he could offer to the jury that would counter what the surveyor said, and so the court granted an opportunity to present that outside the presence of the jury. Turned out that the observations that Mr. Evans had were not useful at all. The court said no, the jury does not need to hear this. It would confuse them. We have not challenged that with respect to the observations and their relevance to the survey. The things that he did say about why he believed in the first proffer, why he believed that he knew where the boundary was, and the entirety of the second proffer, where he talked about walking the land with his father, he talked about being there 30 years, he talked about helping some of his neighbors find where the property boundary lines were. All of those things we believe, had the jury heard that, would have helped them to understand his intention and that he was intending to do something lawful, not something unlawful. So you were trying to make a case that went purely to mens rea on that, as you saw it on that element. Exactly. Yes, and so we believe, both from the nature of willfulness, from the elements of scienter, from the cases that we argued, and from the text of the statute itself, that willfulness should be applied not only to starting the fire, that's the court instructed, but also to the element of government ownership of the land. In this particular case, that was something that was relevant to the mens rea. So counsels, to do that, it seems there could be several ways to do that. One might be the text compels that result. Yeah, it seems to me, yeah, you don't want to abandon that, but that might be a hard thing to do. But some, maybe you think that applies too. It seems like another way would be just the general canon of mens rea that we, that the law generally criminalizes conscious wrongdoing. But, and then you have, I think the argument that, well, when we have a situation that is jurisdictional language, that in and of itself doesn't have, that doesn't involve otherwise criminal activity, well then maybe it's okay. So I'm just trying to, I mean, maybe you're building on all those things. Do you, is there one that you think is your best argument? Where are you trying to go with it? Judge, you're exactly right. We're building on all three of those. We believe all three of those are good arguments. I think the best argument, from my perspective, is the nature of willfulness. And that willfulness must include an intent to do something unlawful. And I think, I believe the government and we are in agreement that government ownership of the land is a jurisdictional element. I believe we're also in agreement that there's at least a possibility in a small number of cases that the jurisdictional element can also be a substantive element. Where we part company is we believe this is that case and the government believes it's not. We believe that the simple way to tell the difference between when it's so it's a jurisdictional element sometimes but sometimes not. We believe that a jurisdictional element is also substantive when it describes, defines the difference between lawful and unlawful conduct. Right. And we believe that purposes of this statute as opposed to a general proposition on that point is the arson of federal lands statute, this prong of it that is required to prove jurisdiction. Are you saying that that's sometimes just a jurisdictional element or sometimes both a jurisdictional and a mens rea element? We think it's just, we think that it's unlawful conduct. What about the case involving lying to a federal agent? Lying is not a good thing but it's not a legal thing. And doesn't that, doesn't the distinction about lawful and unlawful conduct seem to have some appeal but the cases don't limit themselves to those? Yeah I think if, I think you're talking about the Uremain case and there it said you know it is, it was a formal document, I think maybe an employment document and they said that it it would be understood to be culpable if not unlawful. It probably would be unlawful to lie on an employment application form and the fact that it happened to be an employment, the employer was going to be the government, didn't really make any effect in terms of the culpability of the conduct. It made an effect in terms of the jurisdiction that you know would be applicable. So we, you know, I said willfulness was I think our strongest argument. I will mention the text of the statute and I've briefed that especially in the reply brief at some length. And I believe that the cyanter, the cases that we have briefed also are important for that. For these reasons we would, if there are no more questions, we'd ask the court to stand on our brief. You're going to have rebuttal time. I do have a few minutes of rebuttal time. What evidence did you present at trial that was actually heard by the jury? Regarding this issue, very little. I think the government in its brief mentions that my client got to say once or twice that he believed he was on his own land. I think the judge actually struck that. There was some evidence presented by the government that he might have known that he was on government land when he did these actions. This is a good jury question. Juries can take this contradictory evidence and make decisions. But the judge in this case instructed them to ignore that, said willfulness only applies to starting that fire, any fire, anywhere. And if it turns out that it was on federal land, the jurisdictional element as the court instructed the jury. This could have been a man who was trying to protect his property from an oncoming forest fire. Could have been somebody camping who had some, you know, because of the weather they needed to start a fire and they were in the wrong place at the wrong time. There are any number of reasons why a person who started this fire could have had some justification for it. But the court instructed the jury to ignore any of that and simply say that they intend to start a fire. That was the only element of the offense that the court said the jury should look to willfulness for. Thank you very much, Mr. Gillette. We'll hear from you on rebuttal. Mr. Enright. Thank you, Your Honor. I please the court, Anthony Enright for the United States. I would like to start by answering, I think, a very important question Judge Agee asked, which is what evidence did the court rule on very early in the trial? We had a debate about a motion to eliminate. And the court said, I'm not going to instruct the jury. I'm going to instruct the jury that the government did not need to prove that he knew he was on federal land when he started the fire. But I will instruct the jury that the government has to prove he acted willfully. And in response to that, the defense said, well, I would like to make a proffer for this court's benefit in case the jury instructions are wrong. The defense never sought to introduce that evidence in the second proffer before the jury. And in fact, the judge asked, can we have that proffer after you've rested while the jury is deliberating? And the defense said, sure, that would be fine. And that's exactly what happened. He rested, then made the proffer, told the court it was for the benefit of this court, never sought to reopen evidence, and never asked the court to make a ruling on the admissibility of that evidence. Did you say that in your brief? I did, Your Honor. Well, the defense didn't raise the second proffer as an evidentiary ruling in his opening brief. So I didn't respond to that as if it had been raised. The first time I saw any argument that the court improperly excluded that evidence was in the reply brief. I mean, I thought that was kind of the heading, right? Wasn't that the bold-faced, capitalized heading of the brief, that the court prevented us from putting on any evidence to counter willfulness? Yes, any evidence. His own testimony that he thought he was on his own land. Yes, Your Honor. And that's why I took a guess. What rulings are we talking about? And I walked the court through all the rulings the court actually made on the defense evidence. Made first a ruling on that first proffer. The defense, again, said that proffer isn't about subjective intent. It's about the actual bound. And the court said, well, that doesn't meet the requirements of Rule 701. And I did walk through that. Yeah, it seemed to kind of morph. I read this a couple times. I mean, you probably are more familiar, but it started out as a ruling just about, you know, the judge said, I don't like motion in limine. You're asking me to predict what's going to happen. That's tough. I'm just saying this is a jurisdictional element. The government doesn't have to prove willfulness to that element, that instruction. But then as it came up more and more throughout the trial, there were arguments about willfulness and that the very existence of mens rea in this case is up for dispute because, you know, they cited the Bryan case and said there's no bad purpose. And then the judge's ruling seemed to kind of expand and said, no, I'm not going to allow any of, I'm not going to allow him to talk about that at all. So I agree there was discussion about that, but I think there's a lot of discussion, much like the courtroom here. The court asked the defense about it. Well, what is the relevance of his subjective intent? And that, I think, is fair. Sometimes the court may say this to the effect that I don't think it's relevant, but ultimately when there was a ruling made excluding evidence or giving the jury an instruction, the court made the correct rulings and rulings the defense agreed with, especially with the instruction. The defense, the court instructed the jury that it had to find willfulness and that willfulness requires intent, do something the law forbids. And the defense when at the charge conference says that was an entirely proper instruction on willfulness. The jury had to find that he knew his conduct was unlawful. And that is all that willfulness required. And do you agree that putting aside the jurisdictional element, put aside what the element would be a complete defense to willfulness if he thought he was on his own property? No, your honor. I do not agree with that. I believe that it would be a complete defense. Well, that would have to be willfulness as to this jurisdictional element. Not necessarily, your honor. If he believed he was on his own. I mean, if somebody starts a fire, he knows he starts the fire. You assume there's no fire. That's correct. That's your first problem, right? But then you have to show that it was a fire on government property. Yes, your honor. So, let's, let me give you a hypothetical that isn't, I don't think too far out of the realm because I've seen these cases. So, the government presents its case as a surveyor, qualifies as an expert, because these are the lines. More testimony, layer expert, here's where the fire was. Then you have a defendant who produces a survey. And so, the experts go back and forth and the jury finds that the arsonist's survey was incorrect. There was a defect. That the survey included property that when you went back and traced the deeds back far enough that the calls were wrong. So, I'm sorry, your honor. I think I missed that last phrase. This is the jury found that the survey was incorrect. Went back in time, somewhere along the line, chain of title, the calls got mixed up. Or the surveyor, for whatever reason, made a mistake. So, the jury finds indeed the fire occurred and this property was on federal land. Is your case complete as to that element at that point? As to the elements of setting a fire and setting a fire on federal land, yes, under your hypothetical, there's evidence that the fire actually was set on federal land. So, is that it at that point? No. What defense does a defendant have? The defense's defendant would be, I believe when I set that fire that the fire was lawful. Now, there's a big distinction between that and I knew that the fire was on federal land. And the reason is because willfulness requires us to prove that the defendant believed his conduct was unlawful, but it does not require us to prove that he knew why it was unlawful. So, if he believed he set the fire... So, how is that any different from what this defendant in this case wanted to tender his evidence? Your Honor, I don't... So, one challenge I have is that what the defense has said today is a little bit different from what he told the district court. He did not ask for a charge. He started today by saying he should have had a charge that he did not willfully violate the statute if his acts were entirely lawful. Can you just focus on the evidentiary question that Judge H is asking? What's different between the hypothetical you two were just talking about? That he has to... He can show that his conduct wasn't... He didn't know he was... He didn't act with an intent to violate the law, right? A bad purpose. And if here he wanted to show that he thought he was on his own land with permission, that he wasn't... How is that different as an evidentiary matter? If he showed that he was on his own... He believed he was on his own land, we could still establish willfulness if we could establish that he believed his conduct was nevertheless unlawful. And there's plenty of evidence to that effect. So, he believed he was on his own land with permission, but that it was unlawful. Yes. And in this case, there's evidence that he told police officers that he wanted to burn the entire top of the mountain off that he knew belonged to the federal government. If he believed that he started it on his own land and that was his purpose, there's strong evidence that he believed it was unlawful, as is the evidence that he told... Wouldn't a jury have to hear both sides' arguments about that and decide? Certainly. It's not irrelevant that he thought he was on his own property at that point. Oh, it's not irrelevant, Your Honor. We're not saying it's irrelevant. The defendant asked the court to charge that we had to prove he knew he was on federal land. That is not our burden. I'm not disputing the jury charge here. I'm thinking more about his testimony that was excluded. So, he testified not once or twice, five times. Five times, he told the jury, I was on my father's land. And I told... He was on what? On my father's land when I started the fire. Five times. One time, he said it directly. Four times, he said, that's what I told Agent Blaine when he asked me while the fire was still burning. He made a proffer after the jury rested again and said the same thing with more development. Well, he said with more detail, right? He said, here's how I know, right? For the years I've walked the land, here's the boundaries, here's how I know. And so, the question then is, can we say that that exclusion of that testimony was harmless because the jury heard him say that he thought he was honest? I think you could, but I would prefer you go back to the first part of the way you phrased it, which is the court never excluded him. The defense never once asked the court to allow the jury to hear that evidence. So, your argument seems to be more... Can I ask something about it? I thought, going back to what Judge Rushing had gone through earlier, I thought the district court had said several times, I'm not letting any of this in. There's two proffers, and the first proffer, the defendant said, the defense counsel said, I want to introduce evidence of the actual boundaries. I want to introduce evidence of the actual boundaries of the Forest Service. And as my friend mentioned, that was to counter our survey evidence. In other words, the objective boundary. And he said, that's what I want to introduce this evidence for, and I'm going to have... I thought there was a discussion between Mr. Gillette and the district court at some point about, we want to put on members of the family and or Mr. Evans, and they're going to, they want to describe how they arrived at this belief. Yes, your honor. We're talking about the same thing, I think. So, maybe I've just read this wrong, but I thought there were several places where the district court said, no, that's coming in. End of story. That's true, your honor, but I think it was, there was a context for that. And it was in the context of the defense saying, I want to introduce evidence of the actual boundary of the forest. And what the court was saying was... Well, that was after, I mean, Judge Ridinger had already ruled that this is not coming in, unless he said, there might be a fact issue if you disagree about where the actual boundary is. And so, the defense tried to meet that particular factual issue, but that wasn't all... Your honor... The only evidence that was included. Before that time, there was, the defense had not begun its case, and there was no definitive ruling on any particular evidence. The court made an abstract ruling on the motion to eliminate. Our motion to eliminate was to preclude evidence and argument that knowledge that he was on federal land is an element of the offense. So, on 362, the court says, the subjective belief of the defendant as to whether or not the place where the fire was set is government land, or the land of another, or the land of the defendant, would not be relevant. It is a question only of whether the property is actually owned by the government. And that's in response to the defense saying, if our witnesses aren't able to explain why they believe this is owned land, we're precluded from answering the charge. That would seem to be the rule from the Allen case. I guess what we want to know is, is that rule very specific? Is that the position of the government? Our position is the position of the Allen case. Allen holds that we do not have to prove that he knew he was on federal land, but our position is absolutely that we had to prove that he acted willfully, and that he knew his conduct was unlawful. And we told the court that in the district court. We said that at the initial Rule 29 motion, and we suggested the jury instruction from Brian, which is, you have to have intent to do with law forbid, which the court endorsed. The jury was required to find beyond a reasonable doubt that the defendant knew his conduct was unlawful, and he argued that in front of the jury. He said the government did not prove its case. If you find that he went up on that mountain and did not intend to do anything illegal. So do you disagree with the district court statement here that under the standards set out in Allen, whether he believed he was on his own land is irrelevant? You agree the government doesn't have to prove whether he believed he was on his own land or not, but do you agree with the district court that it's irrelevant? I don't agree with that in the abstract. The idea that it's irrelevant is not a complete statement of the law. I do think there's a context here, because on 361, the court says, I believe the witnesses for the defense believe that the land the fire started on was, in fact, privately owned land or belonged to the Evans family. And he told the court repeatedly his goal was to counter the survey expert. And I think the court understood that, because the court said, I want to hear a proper, I have a language here. Don't have a page number. But the court said, I want to hear a proper regarding boundary ownership, regarding the actual boundary. And the fact that he wanted expert testimony, because there's a lot of discussion about government's had an expert. It looks like to me, defendant, you want to put on expert testimony, but it comes through and a lay witness can't do that. Yes, your honor. I think that's exactly right. The court was expecting, because it's a survey. It's something you usually do for meets and bounds with specialized equipment. He was expecting a survey. The defense said, well, I want to have Mr. Evans introduce that evidence. That's why the court wanted to hear a proper. I want to hear a proper, see if you can lay foundation to establish that your opinion about where Forest Service territory ends is admissible. And he didn't meet that standard. And from what I understand, the defense isn't even contesting that. But he doesn't address rule 701. And 701 requires lay testimony be based on. Let's go back for a minute to the first question I asked you about, where you've got the battle of the surveyors. Certainly. The defendant's survey turns out to be wrong. So you've proved there was an intentional fire set. It turns out the fire was on land owned by the federal government. Do you rest at that point? No, your honor. We would also want to prove that the defendant acted willfully. And the reason we have a willfully. Acted willfully to do what? He set the fire with knowledge that setting the fire was, in some general way, unlawful. So we would, in that type of a case, want to have evidence that he said something. He had said something to the effect of, well, I intended to burn someone else's land. Or I knew I was going to jail. Or I believe I broke man's law. If not in this case, but using the hypothetical. If there were no evidence of these other statements. And all you had was. No. We've showed there was an intentional fire set. The fire was on federal land. And you can't show anything else. That would not make our case. So he'd be entitled to a judgment of acquittal. There were no evidence of, I mean, that's a hypothetical. But there were no other evidence of willfulness. That is knowledge subjectively. And the flip side is true too. If he believed he was on federal land. But he had an honest belief that his conduct was lawful. That would be a complete defense also. Like if he thought he had permission. If he thought he had permission. And it was permission from the government. Not permission from his mother. But permission from the government. That would be a complete defense. That's why willfulness operates to distinguish culpable conduct from non-culpable conduct. Even though this element is jurisdictional. He has to have known his conduct was generally unlawful. But what this court held in Bishop. Which is interpreting the Bryan standard. That we all agreed on for willfulness. Is that we don't have to prove that he knew why. So if he was on his land. And he started a fire. And he believed it was unlawful. That's just not a defense. The fact that he was on his land. There's many reasons you could burn a fire on your own land. And have it be unlawful. You intended it to spread to others. That's a federal statute. And other federal statutes. So if the state statute as it does in Virginia, for instance. Prohibits outdoor fires before 4 o'clock. Between February 1 and April 1. This fire was set on March the 1st. That would be sufficient. Because it was clearly an illegal fire. Even though it was on his own land. Well, no your honor. It's not whether it's illegal. Under some other criteria. It's whether he believed it was illegal. So if he believed it was illegal. And was mistaken about that. About why. That would not be a defense. And if he believed it was illegal. Because it was a violation of Virginia law. Even Virginia fire law. But it was actually a violation of 1855. That would also not be a defense. The standard under Bryan. Is you have to know that it is in some general way illegal. But you do not have to know the specific duty you are violating. And the Bishop case. And the Cooper case. They don't draw any distinction. Between something that's a regulatory crime. Or a statutory crime. But it sounds like you're saying that. And I know that there's evidence. From which you could argue. And did argue that he had some. And he knew he was acting illegally. Because he was talking about. Burning down the whole mountain. Absolutely. And he specifically told a police officer. You're going to take me to jail. Because I violated man's law. I got you. But in the mix. For determining whether. He knew he was acting unlawfully. You believe it sounds like. He should have been able to talk about. Why he thought. Are you. This was his land. Or he had permission. You don't think admitting that. Would be wrong. And you think this was more of a failure. To proffer it that way. It was. I mean I want to mention the court. He did. He did introduce that. He said five times. But he didn't get to. He didn't introduce what. He said he wanted to. And maybe that was a failure. Kind of presenting evidence. Or proffering evidence. I think that may be a big part of it. To the extent the defense is arguing. That that evidence that came in. That second proper should have come in. Or that some of the evidence from. The first proper should have come in. Because the defense is the one that said. In that first proper. This is evidence about the boundary. But the second proffer. After the defense rested. After the defense rested. If that had been made. Yet before the defense rested. Is it your. Is it the government's position. That it would be proper. Evidence to own the issue. Of whether he knew. His conduct was unlawful. I. On that. On that issue. Yes. I think it would help. If he had mentioned that to the court. I want to introduce this. For the purpose of proving willfulness. You don't think the court's rulings. Pretty much told him. He couldn't do that. No your honor. Because he didn't present it that way. He didn't ask the court to say. I want an instruction. That my conduct. I had to know my conduct was unlawful. I'm sorry your honor. I know I'm over time. May I answer. Had he presented that way. He very specifically presented this. As an opposition. To a motion in limine. To preclude evidence. An argument that. That knowledge that he's on federal land. Is an element. We had the burden to prove. And the jury instruction he requested was. The government has the burden to prove. He knew he was on federal land. Completely divorced from. Knowledge of illegality. Had he presented it. As this is evidence of willfulness. I think that. We wouldn't have opposed it. We told the court that. And when he. Sought to. I think he did. Didn't it. This brief cited. Brian and quoted that. Willfulness requires a bad purpose. And that this evidence goes to show. That he didn't have a bad purpose. He cited Brian. When asking for a jury instruction. And he got the jury instruction. That he said was proper. I think that was in response. To the motion in limine. I might be wrong. That's true your honor. But the motion in limine was abstract. It didn't rule on any particular evidence. It said he won't be allowed. To introduce evidence. That there's an element. That the United States. Has to prove as an element. He knew he was on federal land. But the court in that response. Said I will instruct the jury. That he had to have acted willfully. And if he wanted to introduce evidence. That he acted. He didn't act willfully. That ruling did not preclude him from doing so. I'm over time. So with that I will. All right. Thank you Mr. Enright. Thank you your honor. Mr. Gillette. Just briefly on a couple of. A couple of issues. The blessing and the burden. Of being trial counsel. Is that I was there. For all of the things. That took place. And maybe. Get blinded to the forest for the trees. But it certainly. I would disagree with. My friend's characterization. That it was just a matter. Of we forgot to ask the court. To let the jury hear this. No from the very beginning. From the government's motion. In Lemony. When the government said. That the court should preclude any evidence. That he thought he was on his own land. To the motion as it was argued. At the beginning of the trial. Several times throughout the trial. It came out. We wanted to introduce evidence. That he believed he was on his family land. And the court said no. And the court. Even that first proffer. Had a dual purpose. Both to present objective evidence. But also to present evidence of belief. And the court said no. Whatever it is. That your client believes. That would confuse the jury. That was the court's word. That would confuse the jury. So yes. All the way through. We tried to introduce the evidence. The type of evidence. If not the exact evidence. That came in that second proffer. And the court shot us down. Every single time. So I do take issue with the idea. That this is just. We forgot to ask the court. Let the jury hear this. In terms of willfulness. I think at this point in time. We may be approaching. Some types of consensus. On what would be a justifiable. What would be a justifiable defense. But it's different. From what the judge charged the jury. This is what the judge said. Therefore ladies and gentlemen of the jury. I charge you. That if you find from the evidence. Beyond a reasonable doubt. That at the time and place. Described in the superseding bill of indictment. That the defendant set a fire. Set on fire. Timber, underbrush or grass. And that the defendant. In setting the fire. Did so willfully. And that the such fire. Was set on lands. Owned by the United States. Then you should find the defendant guilty. Clearly. Whatever evidence. The jury heard. Or might have heard. Regarding whether the. Defendant Mr. Evans. Believed he was doing something. Culpable or not. The judge charged the jury. To ignore it. And confine itself. To did the defendant. Set a fire willfully. Any fire. Anywhere. Anytime. And remove that. Entirely from. The location of the. Of the fire. Being on United States land. You objected at some point. To that instruction. Yes. We absolutely did. We got the judge. To include a short sentence. Defining willfulness. And making reference. To culpable conduct. And then. The court inserted that. Into the middle of a paragraph. Where everything before. And everything after. Went to vitiate. What we had asked the court. To include. And it was a contradiction. The court's. Charge on willfulness. At our request. With the government's. With government's consent. Said that willfulness. Requires culpable intent. And then the court went around. And said no. The only intent. Is regarding setting the fire. And as even my friend here. Has acknowledged. That setting a fire. Is not all always. In fact in many cases. Not at all culpable. The court. I think in this jury instruction. Confused the jury. By restricting. The element of culpability. Or the need for culpability. To the point of non-existence. Got anything else for us Mr. Gillette? I think that's it. Your Honor. If there are no more questions. We thank you. All right. We thank both counsel. For excellent argument today. Mr. Gillette. We noted. That you are court appointed. The court wishes to express. Its appreciation to you.  In this case. Because we could not. Perform our. Functions. In the criminal justice system. And we thank you for that. Unless members of the bar. Like you were willing to step up. And represent indigent defendants. So normally. We would come down as you know. And greet counsel. And well the court. But we're COVID barred. Still from doing that. So we hope when you come back the next time. We'll be able to come down and greet you.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing